UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES AMENNUNO,

               Plaintiff,               Civil Action No. 17-10923
                                               Honorable Linda V. Parker
                                               Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

# REPORT AND RECOMMENDATION
# ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 20]

Plaintiff Charles Amennuno ("Amennuno") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #15, 20), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Amennuno is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (Doc. #20) be GRANTED, Amennuno's Motion for Summary Judgment (Doc. #15) be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On March 27, 2014, Amennuno filed an application for DIB, alleging disability as of November 12, 2011.[1] (Tr. 164-67). This application was denied initially on April 25, 2014. (Tr. 105-09). Amennuno filed a timely request for an administrative hearing, which was held on July 16, 2015, before ALJ David Neumann. (Tr. 29-71). Amennuno, who was represented by attorney Elizabeth Blount, testified at the hearing, as did vocational expert Harry Cynowa. (*Id.*). On January 22, 2016, the ALJ issued a written decision finding that Amennuno is not disabled under the Act. (Tr. 15-24). On February 3, 2017, the Appeals Council denied review. (Tr. 1-5). Amennuno timely filed for judicial review of the final decision on March 23, 2017. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

---

[1] At the administrative hearing, Amennuno amended his alleged onset date to February 28, 2013, the day after a prior unfavorable decision. (Tr. 32).

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C. Background**

*1. Amennuno's Reports and Testimony*

At the time of the administrative hearing, Amennuno was 50 years old, and at 5'9" tall, weighed 230 pounds. (Tr. 35-36). He was single and lived alone. (Tr. 188). He completed high school and one year of college. (Tr. 36, 204). Previously, he worked as a delivery person and in various construction jobs; however, he alleges he stopped working on November 12, 2011, because of his medical conditions. (Tr. 203-04). Subsequently, he participated in a work therapy program through the Veteran's Administration ("VA"), working eight hours per day as a parking lot attendant for approximately eleven months. (Tr. 40, 42-43).

Amennuno alleges disability as a result of both physical and mental impairments, including celiac disease, hypothyroidism, sleep apnea, depression, bipolar disorder, and diabetes. (Tr. 203). He testified that he is moody, has racing thoughts, sometimes has trouble controlling

3

his emotions, and hears voices "once in a while." (Tr. 39, 44, 50). He alternates between "manic highs" and having no energy. (Tr. 49). He takes numerous medications, including Abilify and Lithium, which help him focus "a little better," but he still has difficulties in this respect. (Tr. 41, 50-51).

Amennuno is able to care for his personal needs, drive, shop in stores, prepare simple meals, do laundry, wash dishes, vacuum, use the computer, and read. (Tr. 51-56, 190-92). His hobbies include watching television, listening to music, and singing karaoke. (Tr. 56, 192).

### 2. *Medical Evidence*

The Court has thoroughly reviewed Amennuno's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Harry Cynowa testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 67-70). The ALJ asked the VE to imagine a claimant of Amennuno's age, education, and work experience who can perform light work, with the following additional limitations: can lift and carry ten pounds frequently and twenty pounds occasionally; can stand and walk for two hours total in an eight-hour workday; can sit for six hours total in an eight-hour workday; requires a sit/stand option while remaining at the work station with change of position every hour; needs to avoid unprotected heights and moving machinery; needs to avoid concentrated vibrations; can occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; can only perform simple, routine, and repetitive work at a Specific Vocational Preparation

("SVP")[2] of 1 or 2; and can only occasionally interact with supervisors, co-workers, and the public. (Tr. 68). The VE testified that the hypothetical individual would not be capable of performing Amennuno's past relevant work. (*Id.*). However, the VE further testified that the hypothetical individual would be capable of working in the jobs of hand packager (100,000 jobs nationally), small products assembler (100,000 jobs), and visual inspector/checker (80,000 jobs). (Tr. 69).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Amennuno is not disabled under the Act. At Step One, the ALJ found that Amennuno has not engaged in substantial gainful activity since February 28, 2013 (the amended alleged onset date). (Tr. 17). At Step Two, the ALJ found that he has the severe impairments of bipolar disorder, obesity, and diabetes mellitus. (*Id.*). At Step Three, the ALJ found that Amennuno's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 18).

The ALJ then assessed Amennuno's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: can lift and carry ten pounds frequently and twenty pounds occasionally; can stand and walk for two hours total in an eight-hour workday; can sit for six hours total in an eight-hour workday; requires a sit/stand option while remaining at the work station with change of position every hour; needs to avoid unprotected heights and moving machinery; needs to avoid concentrated vibrations; can occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; can only

---

[2] The Dictionary of Occupational Titles lists an SVP time for each described occupation. For instance, using the skill level definitions in 20 C.F.R. § 404.1568, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. *See Soc. Sec. Rul.* 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

perform simple, routine, and repetitive work at an SVP of 1 or 2; and can only occasionally interact with supervisors, co-workers, and the public. (Tr. 19).

At Step Four, the ALJ determined that Amennuno is not capable of performing his past relevant work. (Tr. 22). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Amennuno is capable of performing a significant number of jobs that exist in the national economy. (Tr. 23). As a result, the ALJ concluded that Amennuno is not disabled under the Act. (Tr. 24).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486

F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

Before this Court, Amennuno's sole argument is that the ALJ erred in discounting the opinion of his treating psychiatrist, V.A. Kololgi, M.D., and in failing to give "good reasons" for doing so. (Doc. #15 at 17-21). Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically

acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

The opinion at issue is a July 21, 2015 Medical Source Statement in which Dr. Kololgi opined that Amennuno is moderately limited in the ability to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, and interact appropriately with supervisors; and markedly limited in the ability to understand, remember, and carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public and co-workers, and respond appropriately to usual work situations and changes in a routine work setting. (Tr. 1106-07). The ALJ gave Dr. Kololgi's opinion little weight because it was "not supported by his own examinations" of Amennuno. (Tr. 22).

8

Amennuno now argues the reason articulated by the ALJ for discounting Dr. Kololgi's opinion amounts to "virtually no reason at all," warranting remand. (Doc. #15 at 17). Indeed, Amennuno asserts that where he saw Dr. Kololgi on at least seventeen different occasions, the ALJ's vague dismissal of Dr. Kololgi's opinion as unsupported by his own examinations makes it "impossible to know on what evidence the ALJ relied to find that the treatment did not accord with the Opinion …." (*Id.* at 18).

Reversal and remand is generally appropriate when the ALJ fails to give good reasons for discounting a treating physician's opinions, even if "substantial evidence otherwise supports the decision of the Commissioner." *Wilson*, 378 F.3d at 543-46 (6th Cir. 2004). This is because a "failure to follow the procedural requirement 'of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Rogers*, 486 F.3d at 243; *see also Wilson*, 378 F.3d at 546 (a reviewing court "cannot excuse the denial of a mandatory procedural protection simply because ... there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely"). However, as explained in *Friend*, certain exceptions exist where a violation of the general rule constitutes "harmless error" not warranting remand, including:

> if (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of [§ 1527(c)(2)] – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation. In the last of these circumstances, the procedural protections at the heart of the rule may be met when the supportability of a doctor's opinion, or its consistency with

9

other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments. Thus the procedural rule is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.

*Friend*, 375 F. App'x at 551 (internal quotations and citations omitted) (emphasis in original).

Here, the third exception[3] is applicable because, reading the ALJ's decision as a whole, it is clear why the ALJ found that Dr. Kololgi's opinion was "not supported by his own examinations of the claimant" and, thus, why he declined to give that opinion substantial weight. For instance, the ALJ repeatedly noted in his decision that Amennuno's "[t]hought processes were normal and coherent" and "goal directed" (Tr. 18, 20-21), a consistent finding in Dr. Kololgi's examinations (*e.g.*, Tr. 303, 318, 332, 535, 540, 544, 549, 559, 564, 995, 1004, 1016). This, and Dr. Kololgi's findings regarding thought content, do not support even the extremely limited narrative in the doctor's opinion; while Dr. Kololgi listed "racing thoughts" as one of Amennuno's "primary symptoms" (Tr. 1106), his notes describe no such problem in the thought content prong of Amennuno's mental status examinations (*see* Tr. 564, 1004, 1016 ("denies current racing thoughts"); *see also* Tr. 303, 318, 332, 535, 540, 544, 549, 560, 564, 995 (noting no abnormalities in terms of thoughts process or content)). As the ALJ also noted (Tr. 20), Dr.

---

[3] The Commissioner also argues that the first exception applies because Dr. Kololgi's opinion is "patently deficient." (Doc. #20 at 5-6 (citing *Wilson*, 378 F.3d at 547). There is some merit to this argument, as Dr. Kololgi completed his opinion in July of 2015 – more than one year after his most recent medical appointment with Amennuno – and the opinion is basically a check-box assessment lacking in any meaningful narrative support. (Tr. 1106-08). Indeed, Dr. Kololgi fails to identify any objective findings in support of his opinion; rather, he says only that Amennuno had "difficulty" meeting the expectations of his supervisors and understanding appropriate interactions with others, and that his "primary symptoms are racing thoughts [and] mood swings." (*Id.*). Under the circumstances, however, where the ALJ's decision articulates good reasons for discounting Dr. Kololgi's opinion, the Court need not determine whether this opinion is "patently deficient."

Kololgi repeatedly rated the intensity of Amennuno's mood swings (the other "primary symptom") as "milder" or "improving" (Tr. 301, 317), which – again – undercuts his opinion that these mood swings cause marked limitation in Amennuno's functioning. Likewise, as the ALJ noted (Tr. 20-21), Dr. Kololgi's examinations consistently describe Amennuno as cooperative in terms of behavior (Tr. 303, 318, 332, 534, 540, 544, 549, 559, 564, 995, 1004, 1016), which is at odds with the "marked" social restrictions Dr. Kololgi assessed in the medical source statement (Tr. 1107).[4] Thus, where, throughout his decision, the ALJ identified and discussed a significant amount of record evidence that is inconsistent with Dr. Kololgi's opinion, the Court finds that any violation of the "good reasons" requirement of the treating physician rule is harmless under the circumstances.[5]

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment (Doc. #20) be GRANTED, Amennuno's Motion for Summary Judgment

---

[4] Additionally, as the ALJ noted (Tr. 20-21), other evidence in Amennuno's VA medical records is at odds with Dr. Kololgi's opinion that he is moderately limited in his ability to interact appropriately with supervisors and markedly limited in his ability to interact with co-workers and the public. (*See, e.g.,* Tr. 296 (noting that Amennuno "is making good progress at work" and "has a good relationship with supervisor and peers"; 346 (Amennuno confident "he can engage in this type of work" as a cook); 377 (Amennuno "doing a great job" working full-time hours as "the shift lead").

[5] Amennuno's remaining argument – that the ALJ should have re-contacted Dr. Kololgi for clarification of his opinion (Doc. #15 at 20-21) – is not persuasive. The regulations give ALJs the *discretion* to re-contact a treating physician. *See Hollis v. Comm'r of Soc. Sec.*, 2015 WL 357133, at *23 (E.D. Mich. Jan. 27, 2015) (citing 20 C.F.R. § 404.1520b(c)). Moreover, aside from the discretionary nature of the applicable regulation, "the decision to recontact is driven by the inadequacy of the evidence in the record." *Id.* at *24. Here, the other evidence the ALJ relied on – including the opinions of state agency expert Colin King, Ph.D. and consultative examiner Nick Boneff, Ph.D. – provides substantial evidence in support of his decision that Amennuno is not disabled. Thus, Amennuno has identified no error warranting remand.

(Doc. #15) be DENIED, and the ALJ's decision be AFFIRMED.

| | |
|---|---|
| Dated: November 16, 2017<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 16, 2017.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager